IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 12-cr-00033-CMA

UNITED STATES OF AMERICA,

      Plaintiff,

v.

JAMSHID MUHTOROV,

      Defendant.

## ORDER OF DETENTION

**Michael E. Hegarty, United States Magistrate Judge**.

      This matter was before the Court for a detention hearing on February 14, 2012. Assistant United States Attorney Greg Holloway represented the government, and Brian Leedy and Warren Williamson represented the Defendant. The Defendant contested detention.

      The Court has concluded, by a preponderance of the evidence, that no condition or combination of conditions of release will reasonably assure the appearance of the Defendant at future Court proceedings, and by clear and convincing evidence, that no condition or combination of conditions of release will reasonably assure the safety of the community, based on the attached findings.

      IT IS HEREBY ORDERED that the Defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; and

      IT IS FURTHER ORDERED that the Defendant is to be afforded reasonable opportunity to consult confidentially with defense counsel; and

      IT IS FURTHER ORDERED that upon order of this Court or on request of an attorney for the United States of America, the person in charge of the corrections facility shall deliver Defendant to the United States Marshal for the purpose of an appearance in connection with this proceeding.

DATED and ENTERED this 15th day of February, 2012, in Denver, Colorado.

BY THE COURT:

S/Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge

United States v. Jamshid Muhtorov
Case No. 12-cr-00033-CMA

FINDINGS OF FACT, CONCLUSIONS OF LAW, and
REASONS FOR ORDER OF DETENTION

In order to sustain a motion for detention, the government must establish that (a) there is no condition or combination of conditions which could be imposed in connection with pretrial release that would reasonably insure the defendant's presence for court proceedings; or (b) there is no condition or combination of conditions which could be imposed in connection with pretrial release that would reasonably insure the safety of any other person or the community.

If there is probable cause to believe that the defendant committed an offense which carries a maximum term of imprisonment of over 10 years and is an offense prescribed by the Controlled Substances Act, or if the defendant is charged with a crime of violence, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community.

The Bail Reform Act, 18 U.S.C. § 3142(g), directs the court to consider the following factors in determining whether there are conditions of release that will reasonably assure the appearance of the defendant as required and the safety of any other person and the community:

(1) [t]he nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including –

  (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

  (B) whether at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

The Court has taken judicial notice of the court's file, the pretrial services report, and the evidence produced and comments of counsel at the hearing. Weighing the statutory factors set forth

1

in the Bail Reform Act, I find the following:

The Indictment issued in this case charges Defendant with a violation of 18 U.S.C. § 2339B, Material Support of a Designated Foreign Terrorist Organization and Attempt to Do the Same. The parties dispute whether a rebuttable presumption of detention applies here. Under 18 U.S.C. § 3142(e)(3)(C),[1] "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if [the Court] finds that there is probable cause to believe that the person committed . . . an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed." Subsection (g)(5)(B)(i) lists within the definition of "Federal crimes of terrorism" a violation of 18 U.S.C. § 2339B, the charge in this case. That charge carries with it a maximum prison term of 15 years. The plain language of the detention statutes requires a presumption of detention here.

Concerning another preliminary procedural issue, the Defendant requested that I suppress the information obtained by the Government pursuant to the Foreign Intelligence Surveillance Act (FISA), 50 U.S.C. §§ 1801-1811, 18211-1829. Such information was used both in the Affidavit in support of the original Complaint in this case, and at the detention hearing. Defendant made a timely motion to suppress. I agree FISA requires that, in the event a Defendant who is an aggrieved person files a motion to suppress FISA information which the Government intends to use in any "hearing, or other proceeding," the Court must engage in certain procedures, which includes viewing the material *in camera* in order to determine whether the "surveillance of the aggrieved person was lawfully authorized and conducted." 50 U.S.C. § 1806(f). In apparent contradiction to this statute, 18 U.S.C. § 3142(f) states that the rules of admissibility do not apply to the consideration of evidence for purposes of pretrial detention. In *United States v. Hightower*, 203 F.3d 836 (Table), 2000 WL 136813 (10th Cir. Feb. 7, 2000) (unpublished), the Tenth Circuit acknowledged that information suppressed by the district court was also used in that court to detain the defendant. The order of suppression was under review by the Tenth Circuit and, if affirmed, would likely have resulted in the release of the defendant. The Tenth Circuit was content to allow the defendant to remain in custody on the basis of evidence that had been ordered suppressed, relying on the provision in Section 3142(f). I believe adherence to *Hightower* permits reliance on the FISA material even if ultimately determined to be inadmissible. I found no contrary case law requiring a suppression hearing prior to the detention decision and find the Government's argument on this issue the more persuasive position.

I note that in light of the Indictment in this case, probable cause exists to sustain the charges brought against Defendant.

---

[1] At the hearing counsel for the United States mistakenly referenced Section 3142(e)(3)(B), which would not lead to a rebuttable presumption since 18 U.S.C. § 2339B is not "an offense under" Section 2332b but, rather, a defined "Federal act of terrorism" listed in Section 2332b.

I find by a preponderance of the evidence that Defendant represents a risk of nonappearance. Defendant's status in the United States is that of a refugee from Uzbekistan. Defendant was apprehended attempting to board an airplane on a one-way ticket to Turkey. He had resigned his only gainful employment immediately prior to this trip. Before this flight, he had told his minor daughter that he may not see her again on earth but, if she is good, would see her in heaven. In addition, Defendant had an earlier argument with his wife,[2] specifically arguing that she must choose him or choose her mother (at a time when Defendant's wife was planning an extended visit overseas to her family). At that time his wife accused *him* of wanting to leave the family "for Turkey." I also find relevant Defendant's prior experience with the incarceration, in Uzbekistan, of his sister, which he has worked tirelessly to remedy and which appears to have some connection with (or perhaps is the genesis of) the "material support to terrorist organization" allegations raised by the Government here. The prospect of Defendant's potential incarceration in this case, coupled with his apparent political beliefs and the situation with his sister, give me grave concerns, beyond the typical case, that the Defendant would flee to avoid prosecution. It is also apparent that he has the wherewithal to travel internationally, albeit, in this situation, it would have to be without his passport which has been surrendered to the Clerk of the Court. Finally, and not insignificantly, Immigration and Customs Enforcement has issued a detainer for Defendant and could, theoretically, remove the Defendant prior to his prosecution under the current Indictment.

Moreover, I find by clear and convincing evidence that Defendant represents a risk to other persons or the community. The testimony in this case reasonably leads to the conclusion that the Defendant is willing to sacrifice his own life for his Bay'ah - his oath of allegiance to the Islamic Jihad Union (IJU). Defendant was apprehended on his way to Turkey. The Government alleges in paragraph 9 of the Affidavit of FBI Special Agent Donald Hale that in April 2009, Turkish authorities seized weapons and detained extremists associated with the IJU. Defendant was leaving behind his wife and children and taking with him over $2800.00 (having purchased an airline ticket that cost in excess of $1000.00) despite his statement to authorities, upon his arrest, that he could barely support his family. The Government also proffered a discussion Defendant had with a witness, who related that Defendant's understanding of Islam is of the more radical version, supporting "jihad" or holy war, and that Defendant's "teachers" in his faith are Anwar al-Awlaki and Osama bin Laden. I have a grave concern that, rather than go to jail in the United States, Defendant is at risk of choosing an alternative that would present a risk to other persons or the community.

As a result, after considering all of these factors, I conclude there is a preponderance of the evidence that no condition or combination of conditions for release will reasonably assure the Defendant's appearance for court proceedings, and there is clear and convincing evidence that the Defendant is a threat to the community, especially in light of the presumption of detention in this

---

[2]There was some discussion about whether I would rely upon intercepted conversations between Defendant and his wife. Defense counsel ultimately determined that Defendant would not object to my use of such conversations, primarily in reliance upon conversations that supported Defendant's theories of risk of flight and risk to the community.

3

case.