IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:12-cr-00033-JLK

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. JAMSHID MUHTOROV, and

2. BAKHTIYOR JUMAEV,

    Defendants.

**GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANTS'
MISCELLANEOUS MOTIONS FOR NOTICE (Docs. 652, 653, 658)**

    The United States of America, through John F. Walsh, United States Attorney, and Greg Holloway, Assistant United States Attorney, both for the District of Colorado, and Erin Creegan, Trial Attorney for the United States Department of Justice, National Security Division, Counterterrorism Section, offers the following consolidated response to the defendants' motions for notice of interceptions and/or surveillance of defense counsel and defense teams and of surveillance techniques used by the government in its investigation of the defendants (Docs. 652, 653, 658).

**I.   Introduction**

    On January 19, 2012, the government charged Muhtorov by criminal complaint with providing material support or resources to a designated foreign terrorist organization, namely, the Islamic Jihad Union (IJU), in violation of 18 U.S.C. § 2339B (Doc. 1). On January 23, 2012, a federal grand jury returned a one-count indictment charging Muhtorov with the same offense (Doc. 5). On March 20, 2012, the grand jury returned a superseding indictment charging Muhtorov with two counts of providing and attempting to provide material support

1

and resources to the IJU, and Muhtorov and Jumaev with one count of providing and attempting to provide material support and resources to the IJU, and one count of conspiring to commit that offense, all in violation of 18 U.S.C. § 2339B (Doc. 50). The grand jury returned a second superseding indictment on March 22, 2012, containing the same charges as the first superseding indictment (Doc. 59).

On February 7 and April 4, 2012, pursuant to 50 U.S.C. §§ 1806(c) and 1825(d), the United States provided notice to this Court and defendants Muhtorov and Jumaev that it intended "to offer into evidence or otherwise use or disclose in any proceedings in the above-captioned matter, information obtained and derived from electronic surveillance or physical search conducted pursuant to the Foreign Intelligence Surveillance Act of 1978 (FISA), as amended, 50 U.S.C. §§ 1801-1811, 1821-1829." (Doc. 12, 68.) After reviewing the defendants' motions to suppress the FISA information, and conducting an *ex parte*, *in camera* review of the relevant material, the Court denied both defendants' FISA-related motions on September 24, 2012. (Doc. 196.)

On October 25, 2013, pursuant to 50 U.S.C. §§ 1806(c) and 1881e(a) (also known as "Section 702" of the FISA Amendments Act, "FAA"), the United States provided the Second FISA Notice to Muhtorov, stating that it intended "to offer into evidence or otherwise use or disclose in any proceedings in the above-captioned matter information obtained or derived from acquisition of foreign intelligence information conducted pursuant to the Foreign Intelligence Surveillance Act of 1978 (FISA), as amended, 50 U.S.C. § 1881a." (Doc. 457.) On January 29, 2014, Muhtorov filed a motion to suppress evidence obtained or derived from collection under Section 702, together with a motion for discovery of materials related to the Section 702 collection (Doc. 520). Jumaev filed a motion requesting that the Court order the government to provide him notice as to its intent to use evidence obtained or derived from surveillance authorized by the FAA (Doc. 458). In its response and surreply to Jumaev's motion, the government stated that it does not intend to introduce or otherwise use or disclose against Jumaev in any trial, hearing, or other proceeding in this case evidence obtained or derived from Section 702 acquisition to which Jumaev is an aggrieved person, and, thus, Jumaev is not entitled to any additional notice under FISA (Doc. 470, 525). Nonetheless, on January 30, 2014, Jumaev filed a motion to adopt Muhtorov's Section 702-related suppression motion and motion for discovery (Doc. 521). The government filed its response to the defendants' motion on May 9, 2014 (Doc. 559). Muhtorov replied on July 3, 2014 (Doc. 602) and Jumaev on July 11, 2014 (Doc. 603). The Court has yet to rule on Jumaev's

motion for notice under 50 U.S.C. §§ 1806(c) and 1881e(a) or on the defendants' motion to suppress the Section 702 material.

On October 20, 2014, Jumaev filed the instant motion for the government to provide notice of interceptions and/or surveillance of his defense counsel and members of his defense team (Doc. 652). On the same day both defendants filed a joint motion for notice of the surveillance techniques utilized by the government in its investigation of the defendants (Doc. 653). On October 28, 2014, Muhtorov moved to adopt his co-defendant's motion, Doc. 652 (Doc. 658). The defendants and the Court agreed to give the government until February 26, 2015, to answer the numerous issues presented in these filings. What follows is the government's consolidated response to the issues presented in the defendants' motions.

## II. Notice Requirements Generally

The defendants have requested that the Court issue an order requiring the government to provide notice of: "(1) each surveillance technique it used to obtain information about the defendants' communications or activities in its investigation; (2) the timing or duration of that surveillance; (3) the legal authority relied upon; and (4) the evidence obtained or derived from that surveillance." (Doc. 653 at 2-3.)

Notice concerning the government's intent to use evidence in a criminal case is generally governed by Rules 12 and 16 of the Federal Rules of Criminal Procedure. Rule 12(b)(4)(B) provides in relevant part:

> [T]he defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16.

The purpose of this rule is to "…provide the defendant with sufficient information to file the necessary suppression motions." *United States v. Lujan*, 530 F. Supp. 2d 1224, 1246 (D.N.M. 2008), quoted in *United States v. Ishak*, 277 F.R.D. 156, 158 (E.D. Va. 2011). As noted by U.S. District Judge Ellis:

> Thus, the government's obligation under Rule 12(b)(4)(B) ends when it has made disclosures that sufficiently allow the defendants to make informed decisions whether to file one or more motions to suppress.

*Ishak*, 277 F.R.D. at 158.

3

No court has interpreted Rule 12(b)(4)(B) to require the government to give an accounting of every investigative technique used in the case, regardless of its relationship to admissible evidence. Nor does the rule require the government to do what the defense is asking in this case: to produce a list or spreadsheet linking each piece of evidence provided in discovery to the statutory or other legal authority justifying the government's collection of that information. In a typical criminal case, defense counsel analyzes the discovery, determines what suppression motions to make, and files them. The government then responds. That is precisely what should occur in this case.[1] And, contrary to the defendants' claims, the government has provided appropriate notice, as it is required to do under any additional applicable statutes. The defendants' requests for more information than any rule or statute requires should be denied.

### III. Requests for Additional Notice under FISA

*1. Defendants' Requests Exceed the Government's FISA Notice Obligations*

The government has previously provided statutorily required notice of the use of evidence obtained or derived under FISA Title I (electronic surveillance), FISA Title III (physical search), and, as to Muhtorov, FISA Title VII (specifically Section 702 acquisition). The defendants request information about the timing and duration of these authorities, and which specific pieces of evidence are linked to which authority. However, there is no legal basis for such a request. With respect to the disclosure of particular information contained in FISA applications, orders, and other related materials presented to the FISC—such as the identity of a FISA target, the definition of an agent of a foreign power argued/used with respect to the target, the dates of collection relevant to the evidence, or whether emergency collection authority was sought or granted—that information falls outside the government's notice obligations under FISA. Rather, sections 1806(f) and 1825(g) of Title 50 provide the only process by which a defendant may seek to discover, or a Court may order disclosure of, information contained in applications, orders, and other related materials provided to the FISC. Those sections provide that if the Attorney General files an affidavit that disclosure or an adversary hearing would harm the national security of the United States, the district court must review *in camera* and *ex parte* the application, order, and such other materials relating to the FISA collection as may be

---

[1] The defendants' claim that they have received "only limited discovery" is inaccurate. Doc. 653 at 3-4. The defendants have received nearly 5,000 pages of discovery and hours of recordings.

necessary to determine whether the collection of evidence to be used against the aggrieved person was lawfully authorized and conducted.

In making this determination, the district court may order disclosure to the defense only where such disclosure is necessary to make an accurate determination of the legality of the collection, or as required by due process. *See* 50 U.S.C. §§ 1806(f) and (g), 1825(g) and (h).   These are the only statutory bases on which a district court may order disclosure of FISA materials or their content. They are not triggered until after a defendant files the appropriate motion and the district court considers the government's classified response and attachments *ex parte* and *in camera*. *See United States v. Daoud*, 755 F.3d 479, 482 (7th Cir. 2014) ("The statute requires the judge to review the FISA materials *ex parte* and *in camera* in every case, and on the basis of that review decide whether any of those materials must be disclosed to defense counsel.").

### *2.  Defendants Are Not Entitled to Additional FISA Notice*

The defendants also allege that the government has erroneously not provided notice of the use of evidence obtained or derived from FISA pen register or trap and trace device authority or the use of any evidence obtained or derived under the FISA business records provision, Section 215. The Court should reject the defendants' claims.

With respect to FISA pen register or trap and trace device authority, Congress enacted criteria in 50 U.S.C. § 1845(c) to define the extent of the government's notice obligations.  The government's notice obligations apply only if the government (1) "intends to enter into evidence or otherwise use or disclose" (2) "against an aggrieved person " (3) in a "trial, hearing or other proceeding in or before any Court, department, officer, agency, regulatory body, or other authority of the United States" (4) any "information obtained or derived from" (5) "the use of a pen register or trap and trace device pursuant to" FISA. 50 U.S.C. § 1845(c). When all five criteria are met, the government will notify the defense and the Court (or other authority) in which the information is to be used or disclosed that the United States intends to use or disclose such information. If the statutory criteria for notice identified above were satisfied, the United States would have provided notice to the defendants and this Court that the United States intended to use against either defendant information obtained or derived from a FISA pen register or trap and trace device. No such notice has been provided to the defendants because the statutory requirements have not been satisfied.

With respect to the use of information obtained from Section 215 business records, FISA does not impose any notice obligation on the use of such information. In an analogous context, the Rules of Criminal Procedure do not require the government to notify the defense of the use of information obtained from grand jury subpoenas. Such records would be collected from third parties, so the defendants would lack standing to contest their admission.[2] Nor is there any suppression remedy available even if the government had committed a statutory violation of Section 215 since the statute provides for none. Thus the defendants lack standing to challenge the admission of Section 215-obtained or -derived information and there is no suppression remedy available.

### 3. 18 U.S.C. § 3504 Does Not Entitle These Defendants to Additional Information
#### Regarding the FISA Collection

The government provided notice pursuant to 50 U.S.C. §§ 1806(c), 1825(d) and 1881e(a), which are the specific notice provisions that apply in this case. No court has held that when the government must provide notice under FISA, this obligation triggers an additional notice requirement under 18 U.S.C. § 3504 (a separate statute that typically is applied in other contexts) or that the disclosure of FISA materials must be provided outside of FISA's statutory scheme.[3] A specific statutory provision normally controls over one of more general application.[4] *Bloate v. United States*, 130 S. Ct. 1345, 1353-54 (2010); *Gozlon-Peretz v. United States*, 498 U.S. 395, 407 (1991). Within Section 1806, Congress specified the circumstances under which a district court may disclose information that forms the basis for the government's notice. After an *in camera* and *ex parte* review, "the court may disclose to the aggrieved person, under

---

[2] *See, e.g., United States v. Miller*, 425 U.S. 435 (1976).

[3] FISA itself embodies this principle. Section 1806(f) requires courts to use FISA's procedures "whenever any motion or request is made by an aggrieved person pursuant to any other statute or rule of the United States or any State." The Senate Committee on the Judiciary's report on FISA states that Section 1806(f)'s procedures for challenging FISA surveillance would apply "whenever an individual makes a motion pursuant to subsection (d) or 18 U.S.C. § 3504 . . . ." S. Rep. No. 95-604 pt. 1, at 57 (1977).

[4] Moreover, FISA's Section 1806 was enacted in 1978, approximately seven years after Section 3504 was adopted in 1970. *See* Pub. L. 91-452, Title VII, § 702(a), Oct. 15, 1970. "Where two statutes conflict, the later-enacted, more specific provision generally governs." *United States v. Juvenile Male*, 670 F.3d 999, 1008 (9th Cir.), *cert. denied*, 133 S. Ct. 234 (2012). Thus, there is no basis for holding that Section 3504 trumps FISA's "later-enacted, more specific" notice provision.

appropriate security procedures and protective orders, portions of the application, order, or other materials relating to the surveillance *only* where such disclosure is necessary to make an accurate determination of the legality of the surveillance." 50 U.S.C. § 1806(f) (emphasis added). Thus, it is the specific disclosure provision of Section 1806(f) that controls if, and when, this Court may disclose any materials relating to surveillance to the defense. The defendants are therefore not entitled to any additional information regarding FISA surveillance under § 3504.

Because the defendants are not entitled to any additional notice or information regarding FISA materials, their requests should be denied.

**IV.   Requests for Notice of Surveillance Pursuant to Executive Order 12,333**

The defendants have argued that, pursuant to 18 U.S.C. § 3504 and due process, they are entitled to notice of whether surveillance conducted pursuant to Executive Order 12,333 exists in their case. The requirements of § 3504 are as follows:

> (a) In any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, or other authority of the United States—
> (1) upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act;[5]

Therefore, under circumstances where § 3504 applies, the government would be required to affirm or deny the occurrence of the surveillance only when a defendant makes a colorable claim that evidence is inadmissible because it was "the primary product of" or "obtained by the exploitation of" allegedly unlawful electronic surveillance as to which he is aggrieved.[6]

---

[5] 18 U.S.C. § 3504(b) defines the "unlawful act" as "the use of any electronic, mechanical, or other device (as defined in section 2510(5) of this title) in violation of the Constitution or laws of the United States or any regulation or standard promulgated pursuant thereto."

[6] Although defendants cite *United States v. Apple* for the proposition that they need do no more than make a "positive statement that illegal surveillance has taken place," *Apple,* in fact, states that such a claim must have a "colorable basis" to believe the defendant was aggrieved. 915 F.2d. 899, 905 (4th Cir. 1990). What constitutes a colorable claim is considerably more substantial. *See, e.g.*, recent cases such as *United States v. Aref*, 285 F. App'x 784, 793 (2d

**[SEALED MATERIAL REDACTED]**

## V.  Other Unknown Surveillance

The defendants make a blanket request for yet-unknown forms of surveillance. Since the defendants have offered no basis for the assertion that surveillance is occurring pursuant to an unknown program,[7] this request should be denied.

## VI.  Government Monitoring of Members of the Defense Team

The defendants claim that various surveillance programs exist under which the government could be monitoring their communications (FISA, FAA, Section 215 of the FAA, Executive Order 12,333), so the government must be privy to the defense teams' privileged communications. If the defendants are arguing only that it is technically possible that someone in the United States government could have intercepted one or more of their defense teams' privileged communications pursuant to these programs—but not that the government's prosecution team is reviewing such communications—then that claim is irrelevant

---

Cir. 2008) (summary order) (finding insufficient the defendant's claim that different officials had stated to the *New York Times* that evidence obtained from the warrantless electronic surveillance played a role in the arrest of the defendant, because these allegations constitute only statements "by unnamed sources in a newspaper article"); *United States v. Londono-Cardona*, 2008 WL 313473, at *2 (D. Mass. Feb. 1, 2008) (finding the defendants' showing insufficient where they had failed to provide an affidavit setting forth the basis for their suspicions, the defendants' proffered DEA teletype messages referred "only to apparently *lawful* surveillance in Colombia," and newspaper articles discussing alleged warrantless domestic wiretapping had "no relevance" to the defendants' case); *In re Grand Jury Investigation*, 431 F. Supp. 2d 584, 591 (E.D. Va. 2006) (rejecting a claim that a grand jury witness (and likely subject of the investigation) was the subject of warrantless NSA surveillance because the "bare allegations that the government has been intercepting communications through illegal electronic surveillance" and allegations that the witness had interviewed members of Hamas and written controversial papers regarding Palestinian interests were insufficient to show unlawful wiretapping of the defendant).

[7] In no way does the government hide the existence of FISA or Executive Order 12,333 from the public. FISA is a publically enacted statutory scheme. The text of Executive Order 12,333 is unclassified and publically available.

to the criminal case at bar. If the defendants are contending that prosecution team members, including the undersigned government attorneys, have reviewed any of the defense teams' privileged communications, the defendants' allegations are both unfounded and untrue. In either case, the defendants' motions should be denied.

### 1. Possible Surveillance Unknown to the Prosecution Team

To the extent that the defendants' attorneys believe that they are subject to surveillance, and that such surveillance is causing them injury that is wholly separate and apart from any impact on this prosecution, then their claim should not be resolved in connection with this prosecution. The resolution of a claim that has no impact on a case is not undertaken in aid of the Court's jurisdiction over that case. *See generally* 28 U.S.C. § 1651(a) (empowering federal Courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions…"). This is not the appropriate forum for defense attorneys to raise any purported personal claims.  Further consideration of a claim unrelated to the instant prosecution is inappropriate.

### 2. The Prosecution Team Has Not Been Exposed to Communications of the Defense Teams

If the defendants' contention is that the prosecution team has been gaining access to information collected under FISA, FAA, Section 215, Executive Order 12,333 or another source to improperly and unethically review privileged defense communications, the government categorically denies that this is the case.

**[SEALED MATERIAL REDACTED]**

While it is impossible to know whether any member of the defense teams could have been intercepted by any agency or state government as part of any criminal investigation or intelligence-gathering efforts, the relevant issue here is whether there is reason to believe any such information, if it exists, is being viewed by the prosecution team. Both prosecutors warrant they have not seen, nor are they seeking to see, nor would they review, the product of any defense team member's privileged communication with anyone, for the purposes of their defense or otherwise. The accusation that government counsel have engaged in such conduct is wholly unwarranted and unsupported.

Should any member of the prosecution team be inadvertently exposed to the content of defense counsel's privileged communications, we would immediately bring that information to the attention of the Court. Indeed, to the extent any potentially privileged communications come to the attention of the prosecution—which to date has not occurred—those communications would be reviewed by a "taint team" of prosecutors who are not assigned to this case. To the extent the defendants request that the Court collect information about and monitor the government's efforts, should they be needed, to use a taint team, without any evidence of misconduct, the defendants' request is inappropriate. (Doc. 652 at 3-4.)

In addition, the undersigned government attorneys have confirmed that none of the law enforcement agents assigned to this case or their supervisors have been exposed to any privileged defense communications. Specifically, none of these agents has come upon, reviewed, seen, heard, or in any way learned of any privileged communications of any members of either Muhtorov or Jumaev's defense teams, including their staff. Nor have these agents come to learn of anything about Muhtorov or Jumaev's defense teams' communications with potential witnesses, although witnesses are of course free to relate their conversations with defense counsel with whomever they choose.

For the foregoing reasons, the Court should deny counsel's requested relief.

## VII. Conclusion

Wherefore the government asks this Court to DENY the defendants' miscellaneous motions for discovery.

        Respectfully submitted
        JOHN F. WALSH
        United States Attorney

        *s/ Greg Holloway*
        By: GREG HOLLOWAY, WSBA #28743
        Assistant United States Attorney
        United States Attorney's Office
        1225 Seventeenth Street, Suite 700
        Denver, Colorado 80202
        Telephone: 303-454-0100
        Email: Gregory.Holloway@usdoj.gov

        *s/ Erin Creegan*
        By: ERIN CREEGAN
        Trial Attorney
        United States Department of Justice
        National Security Division
        10th Street & Pennsylvania Avenue, NW
        Room 2740
        Washington, DC 20530
        Telephone: 202-353-7371
        Email: Erin.Creegan@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of February, 2015, I electronically filed the foregoing **GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANTS' MISCELLANEOUS MOTIONS FOR NOTICE (Docs. 652, 653, 658)** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

**Brain R. Leedy**
    Email: Brian_Leedy@fd.org

**Warren R. Williamson**
    Email: Rick_Williamson@fd.org

**Kathryn Stimson**
    Email: kathryn@stimsondefense.com

**Patrick Toomey**
    Email: ptoomey@alcu.org

**David B. Savitz**
    Email: savmaster@aol.com

**Mitchell Baker**
    Email: mitchbaker@estreet.com

*S/Maureen Carle*
MAUREEN CARLE
United States Attorney's Office
1225 Seventeenth Street, Suite 700
Denver, Colorado 80202
Telephone: 303-454-0100
Email: Maureen.Carle@usdoj.gov